# United States Court of Appeals for the Federal Circuit

---

**WI-FI ONE, LLC,**
*Appellant*

v.

**BROADCOM CORPORATION,**
*Appellee*

**JOSEPH MATAL, PERFORMING THE FUNCTIONS AND DUTIES OF THE UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR, U.S. PATENT AND TRADEMARK OFFICE,**
*Intervenor*

---

2015-1944

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-00601.

----------------------------------------------------------------------

**WI-FI ONE, LLC,**
*Appellant*

v.

**BROADCOM CORPORATION,**
*Appellee*

**JOSEPH MATAL, PERFORMING THE FUNCTIONS
AND DUTIES OF THE UNDER SECRETARY OF
COMMERCE FOR INTELLECTUAL PROPERTY
AND DIRECTOR, U.S. PATENT AND TRADEMARK
OFFICE,**
*Intervenor*

————————————

2015-1945

————————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-00602.

-------------------------------------------------------------------

**WI-FI ONE, LLC,**
*Appellant*

**v.**

**BROADCOM CORPORATION,**
*Appellee*

**JOSEPH MATAL, PERFORMING THE FUNCTIONS
AND DUTIES OF THE UNDER SECRETARY OF
COMMERCE FOR INTELLECTUAL PROPERTY
AND DIRECTOR, U.S. PATENT AND TRADEMARK
OFFICE,**
*Intervenor*

————————————

2015-1946

————————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-00636.

————————————————

Decided: January 8, 2018

————————————————

DOUGLAS AARON CAWLEY, McKool Smith, PC, Dallas, TX, argued for appellant. Also represented by DONALD PUCKETT, Nelson Bumgardner PC, Fort Worth, TX; PETER J. AYERS, Law Office of Peter J. Ayers, Austin, TX.

DOMINIC E. MASSA, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, argued for appellee. Also represented by KEVIN GOLDMAN, JANINE MARIE LOPEZ, ZACHARY PICCOLOMINI, KATIE SAXTON.

MARK R. FREEMAN, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, argued for intervenor. Also represented by JOYCE R. BRANDA, MELISSA N. PATTERSON, NICOLAS RILEY; NATHAN K. KELLEY, KAKOLI CAPRIHAN, BENJAMIN T. HICKMAN, THOMAS W. KRAUSE, FRANCES LYNCH, SCOTT WEIDENFELLER, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA.

JEREMY COOPER DOERRE, Tillman Wright PLLC, Charlotte, NC, as amicus curiae.

EUGENE M. GELERNTER, Patterson Belknap Webb & Tyler LLP, New York, NY, for amicus curiae New York Intellectual Property Law Association. Also represented by IRENA ROYZMAN, JASON VITULLO; WALTER E. HANLEY, JR., KSENIA TAKHISTOVA, Andrews Kurth Kenyon LLP, New York, NY; ROBERT M. ISACKSON, Venable LLP, New

York, NY; ROBERT J. RANDO, The Rando Law Firm P.C., Syosset, NY.

DOREEN YATKO TRUJILLO, Saul Ewing LLP, Wayne, PA, for amicus curiae Federal Circuit Bar Association. Also represented by RICHARD ALAN NEIFELD, Neifeld IP Law, PC, Alexandria, VA.

KIA LYNN FREEMAN, McCarter & English, LLP, Boston, MA, for amicus curiae Boston Patent Law Association. Also represented by ERIK PAUL BELT.

SAURABH VISHNUBHAKAT, Texas A&M University School of Law, Fort Worth, TX, for amici curiae Ann Bartow, Michael Risch, Gregory Dolin, Ted M. Sichelman, Christopher Michael Holman, Saurabh Vishnubhakat, Jay P. Kesan, Irina D. Manta, Adam Mossoff.

ERIKA ARNER, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Reston, VA, for amicus curiae American Intellectual Property Law Association. Also represented by DANIEL C. TUCKER; JOSHUA GOLDBERG, Washington, DC; MARK L. WHITAKER, Morrison & Foerster LLP, Washington, DC.

KENNETH J. WEATHERWAX, Lowenstein & Weatherwax LLP, Los Angeles, CA, for amicus curiae Biotechnology Innovation Organization. Also represented by NATHAN NOBU LOWENSTEIN, JONATHAN H. STEINBERG.

SEAN DANIEL JORDAN, Jackson Walker LLP, Austin, TX, for amicus curiae WesternGeco LLC.

JEFFREY A. LAMKEN, MoloLamken LLP, Washington, DC, for amicus curiae Elm 3DS Innovations, LLC.

GREGORY A. CASTANIAS, Jones Day, Washington, DC, for amicus curiae Intellectual Property Owners Associa-

tion. Also represented by DAVID B. COCHRAN, Cleveland, OH; JOHN MARLOTT, ISRAEL SASHA MAYERGOYZ, Chicago, IL; MARK W. LAUROESCH, Intellectual Property Owners Association, Washington, DC; STEVEN W. MILLER, Procter & Gamble Company, Cincinnati, OH; KEVIN H. RHODES, 3M Innovative Properties Company, St. Paul, MN.

STANLEY JOSEPH PANIKOWSKI, III, DLA Piper US LLP, San Diego, CA, for amici curiae Oracle Corporation, Oracle OTC Subsidiary, LLC. Also represented by MARK D. FOWLER, East Palo Alto, CA; JAMES MARTIN HEINTZ, Reston, VA.

JOSEPH GUERRA, Sidley Austin LLP, Washington, DC, for amicus curiae Apple Inc. Also represented by THOMAS ANTHONY BROUGHAN, III, JEFFREY PAUL KUSHAN.

PAUL D. CLEMENT, Kirkland & Ellis LLP, Washington, DC, for amicus curiae Intel Corporation. Also represented by GEORGE W. HICKS, JR.; SOPAN JOSHI, Chicago, IL; MATTHEW JOHN HULT, Intel Corporation, Santa Clara, CA.

---

Before PROST, *Chief Judge,* NEWMAN, LOURIE, BRYSON,[1] DYK, MOORE, O'MALLEY, REYNA, WALLACH, TARANTO, CHEN, HUGHES, and STOLL, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* REYNA, in which *Chief Judge* PROST and *Circuit Judges* NEWMAN, MOORE, O'MALLEY, WALLACH, TARANTO, CHEN, and STOLL join.

Concurring opinion filed by *Circuit Judge* O'MALLEY.

---

[1]    Circuit Judge Bryson assumed senior status on January 7, 2013.

Dissenting opinion filed by *Circuit Judge* HUGHES, in which *Circuit Judges* LOURIE, BRYSON, and DYK join.

REYNA, *Circuit Judge*.

Congress has prohibited the Director of the United States Patent and Trademark Office from instituting inter partes review if the petition requesting that review is filed more than one year after the petitioner, real party in interest, or privy of the petitioner is served with a complaint for patent infringement. 35 U.S.C. § 315(b). Congress also provided that the Director's determination "whether to institute an inter partes review under this section shall be final and nonappealable." *Id.* § 314(d). The question before us is whether the bar on judicial review of institution decisions in § 314(d) applies to time-bar determinations made under § 315(b). In *Achates Reference Publishing, Inc. v. Apple Inc.*, 803 F.3d 652, 658 (Fed. Cir. 2015), a panel of this court held in the affirmative that a § 315(b) time-bar determination is final and nonappealable under § 314(d). Today, the court revisits this question en banc.

We recognize the strong presumption in favor of judicial review of agency actions. To overcome this presumption, Congress must clearly and convincingly indicate its intent to prohibit judicial review. We find no clear and convincing indication of such congressional intent. We therefore hold that the time-bar determinations under § 315(b) are appealable, overrule *Achates*'s contrary conclusion, and remand these cases to the panel for further proceedings consistent with this opinion.

I. BACKGROUND

A. America Invents Act

In 2011, Congress passed the Leahy-Smith America Invents Act ("AIA"), which created inter partes review ("IPR") proceedings. *See* Pub. L. No. 112-29, § 6(a)–(c), 125 Stat. 284, 299–305 (2011); 35 U.S.C. §§ 311–319. IPR

and other post-grant proceedings are intended to be quick and cost effective alternatives to litigation for third parties to challenge the patentability of issued claims. H.R. Rep. No. 112-98, pt. 1, at 48 (2011); 157 Cong. Rec. 2,710 (2011) (statement of Sen. Grassley). Sections 311 and 312 of Title 35 establish who may petition for IPR, the grounds for review in an IPR, the earliest permitted time for a petition for an IPR, and the requirements of the petition for an IPR. Under § 311, a person who is not the owner of a patent may petition the Director to institute IPR of one or more patent claims on permitted grounds, alleging unpatentability on certain prior art bases. Section 312 provides that the petition must, among other things, "identif[y], in writing and with particularity, each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge to each claim." 35 U.S.C. § 312(a)(3). Section 313 provides that the patent owner may file a preliminary response to the petition.

In § 314, subsection (a) prescribes the threshold "determin[ation]" required for the Director to institute: a "reasonable likelihood" that the petitioner will succeed in its patentability challenge to at least one of the challenged patent claims. Subsections (b) and (c) prescribe the timing of and notice requirements for the institution decision. And § 314(d) addresses judicial review of the Director's IPR institution determination under § 314. Specifically, § 314(d) provides that "[t]he determination by the Director whether to institute an inter partes review *under this section* shall be final and nonappealable."[2] (emphasis added).

---

[2] The Director has delegated the authority to institute IPR to the Patent Trial and Appeal Board ("the Board"). 37 C.F.R. §§ 42.4(a), 42.108. We have held this

The remainder of the IPR-related provisions of the AIA go beyond the preliminary procedural requirements and the preliminary determination regarding likely unpatentability. Section 315, for example, governs the relationship between IPRs and other proceedings conducted outside of the IPR process. The provision at issue in this appeal, § 315(b), provides that "[a]n inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent." This one-year time bar does not apply to a request for joinder under § 315(c).

Section 316 addresses the "conduct of" IPRs, including amendments of the patent and evidentiary standards. Section 317 addresses settlement.

If the Director determines to institute IPR, in most cases, the Board must "issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner," as well as any new claims added during IPR. 35 U.S.C. § 318(a). Any party to IPR "dissatisfied" with the final written decision may appeal that decision to this court. *Id.* §§ 141(c), 319.

## B. *Achates*

In 2015, a panel of this court decided the same issue before us today: whether § 314(d) precludes judicial review of § 315(b) time-bar determinations. In *Achates*, the Board canceled certain patent claims through IPR. 803 F.3d at 653. On appeal, the patent owner argued that the Board acted outside of its statutory authority by

---

delegation to be constitutionally and statutorily permissible. *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 812 F.3d 1023, 1033 (Fed. Cir. 2016).

instituting IPR on a petition that was time-barred under § 315(b). *Id.* The panel rejected this argument, holding that "35 U.S.C. § 314(d) prohibits this court from reviewing the Board's determination to initiate IPR proceedings based on her assessment of the time bar of § 315(b), even if such assessment is reconsidered during the merits phase of proceedings and restated as part of the final written decision." *Id.* at 658. According to the panel, the Board's misinterpretation of § 315(b) does not constitute *ultra vires* agency action that might otherwise support judicial review. *Id.* at 658–59. Concluding that this court is barred from reviewing § 315(b) decisions, the panel dismissed for lack of jurisdiction. *Id.* at 659.

## C. *Cuozzo*

Subsequent to our decision in *Achates*, the Supreme Court decided *Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 2131 (2016). In *Cuozzo*, the Court addressed whether § 314(d) bars judicial review of determinations regarding compliance with § 312(a)(3), *i.e.*, whether the petition identified with sufficient particularity "each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge to each claim." *Id.* at 2139–42.

The Supreme Court's analysis of § 314(d) began with a recognition of the "'strong presumption' in favor of judicial review." *Id.* at 2140 (quoting *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1651 (2015)). The Court explained that the presumption of judicial review "may be overcome by '"clear and convincing"' indications, drawn from 'specific language,' 'specific legislative history,' and 'inferences of intent drawn from the statutory scheme as a whole,' that Congress intended to bar review." *Id.* (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349–50 (1984)).

The Supreme Court held that the presumption in favor of judicial review was overcome regarding whether a

petition met the requirements of § 312(a)(3). *Id.* at 2142.
The Court considered the dispute about § 312(a)(3)'s
particularity requirement to be "an ordinary dispute" over
the Director's institution decision. *Id.* at 2139. The Court
concluded that § 314(d) "must, at the least, forbid an
appeal that attacks a 'determination . . . whether to
institute' review by raising this kind of legal question and
little more." *Id.* (alteration in original). The Court spoke
of "the kind of initial determination at issue here—that
there is a 'reasonable likelihood' that the claims are
unpatentable on the grounds asserted." *Id.* at 2140
(quoting § 314(a)). The Court held:

> where a patent holder merely challenges the Pa-
> tent Office's "determin[ation] that the information
> presented in the petition . . . shows that there is a
> reasonable likelihood" of success "with respect to
> at least 1 of the claims challenged," § 314(a), or
> where a patent holder grounds its claim in a stat-
> ute closely related to that decision to institute in-
> ter partes review, § 314(d) bars judicial review.

*Id.* at 2142 (alterations in original). The Supreme Court
noted that the question of whether a petition was pleaded
with particularity amounted to "little more than a chal-
lenge to the Patent Office's conclusion, under § 314(a),
that the 'information presented in the petition' warranted
review." *Id.* In the Court's words, a challenge to the
sufficiency of the "information presented in the petition"
was a nonappealable "mine-run" claim. *Id.* at 2136, 2142.

The dissent contends that the statutory language of
§ 314(d) "is absolute and provides no exceptions." Dis-
senting Op. at 8. The Supreme Court in *Cuozzo* rejected
this contention. The Court made clear that its holding
was limited; it expressly left open the potential for review,
under certain circumstances, of decisions to institute IPR.
First, the Court emphasized that its "interpretation
applies where the grounds for attacking the decision to

institute inter partes review consist of questions that are closely tied to the application and interpretation of statutes related to" the institution decision, emphasizing the "under this section" language of § 314(d) in the citation that follows. 136 S. Ct. at 2141. In stating its holding (quoted above), the Court further tied the "closely related" language to the specific "reasonable likelihood" determination made under § 314(a). *Id.* at 2142. The Court expressly declined to "decide the precise effect of § 314(d) on appeals that implicate constitutional questions, *that depend on other less closely related statutes*, or that present other questions of interpretation that reach, in terms of scope and impact, *well beyond 'this section.'*"[3] *Id.* at 2141 (emphases added). Second, the Court noted that its holding does not "categorically preclude review of a final decision where a petition fails to give 'sufficient notice' such that there is a due process problem with the entire proceeding." *Id.* Finally, the Court wrote that its holding does not "enable the agency to act outside its statutory limits by, for example, canceling a patent claim for 'indefiniteness under § 112' in inter partes review." *Id.* at 2141–42. "Such 'shenanigans,'" according to the Court, "may be properly reviewable in the context of § 319 and under the Administrative Procedure Act." *Id.* at 2142.

## D. The Present Appeal

In 2010, Telefonaktiebolaget LM Ericsson ("Ericsson") filed its complaint for infringement of U.S. Patent Nos.

---

[3]    The dissent's reliance on *Briscoe v. Bell*, 432 U.S. 404 (1977), is misplaced. Unlike *Cuozzo*, *Briscoe* does not address whether a statutory section precluding judicial review of determinations "under this section" would apply to determinations made under any other section of that statute or a different statute.

6,772,215 ("'215 patent"), 6,466,568 ("'568 patent"), and 6,424,625 ("'625 patent") in the United States District Court for the Eastern District of Texas against multiple defendants.[4] The case progressed to a jury trial, where the jury found that the defendants infringed the asserted claims. This court reviewed that determination. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014). Broadcom Corporation ("Broadcom"), the appellee here, was never a defendant in that litigation.

In 2013, Broadcom filed three separate petitions for IPR of the '215, '568, and '625 patents.[5] When Broadcom filed the IPR petitions, Ericsson owned these patents. During the pendency of the IPRs, Ericsson transferred ownership of the three patents to Wi-Fi One, LLC ("Wi-Fi").

In response to Broadcom's petitions, Wi-Fi argued that the Director was prohibited from instituting review on any of the three petitions. Specifically, Wi-Fi argued that the Director lacked authority to institute IPR under § 315(b) because Broadcom was in privity with defendants that were served with a complaint in the Eastern District of Texas litigation. Wi-Fi alleged that the IPR petitions were therefore time-barred under § 315(b) because Erics-

---

[4]    Ericsson brought suit against D-Link Systems, Inc., Netgear, Inc., Acer, Inc., Acer America Corp., Gateway, Inc., Dell, Inc., Belkin International, Inc., Toshiba America Information Systems, Inc., and Toshiba Corp. Intel Corp. intervened and Ericsson amended its complaint to add Intel as a defendant. *See Ericsson Inc. v. D-Link Sys., Inc.*, No. 6:10-CV-473, 2013 WL 4046225, at *24 n.1 (E.D. Tex. Aug. 6, 2013), *aff'd in part, vacated in part, rev'd in part*, 773 F.3d 1201 (Fed. Cir. 2014).

[5]    The technical aspects of the patents are not relevant to this opinion.

son, the patents' previous owner, had already asserted infringement in district court against defendants that were in privity with petitioner Broadcom more than a year prior to the filing of the petitions.

Wi-Fi filed a motion seeking discovery regarding indemnity agreements, defense agreements, payments, and email or other communications between Broadcom and the defendants in the Eastern District of Texas litigation. The Board denied both the motion and Wi-Fi's subsequent motion for rehearing. Wi-Fi petitioned this court for a writ of mandamus, which we denied. *In re Telefonaktiebolaget LM Ericsson*, 564 F. App'x 585 (Fed. Cir. 2014).

The Board instituted IPR on the challenged claims, and issued Final Written Decisions finding the challenged claims unpatentable. In the Final Written Decisions, the Board determined that Wi-Fi had not shown that Broadcom was in privity with the defendants in the Eastern District of Texas litigation, and therefore, the IPR petitions were not time-barred under § 315(b). *Broadcom Corp. v. Wi-Fi One, LLC*, No. IPR2013-00601, 2015 WL 1263008, at *4–5 (P.T.A.B. Mar. 6, 2015); *Broadcom Corp. v. Wi-Fi One, LLC*, No. IPR2013-00602, 2015 WL 1263009, at *4 (P.T.A.B. Mar. 6, 2015); *Broadcom Corp. v. Wi-Fi One, LLC*, No. IPR2013-00636, 2015 WL 1263010, at *4 (P.T.A.B. Mar. 6, 2015).

Wi-Fi appealed the Final Written Decisions, arguing, among other things, that this court should reverse or vacate the Board's time-bar determinations. A panel of this court rejected Wi-Fi's arguments, reasoning that *Achates* renders the § 315(b) time-bar rulings nonappealable. *See Wi-Fi One, LLC v. Broadcom Corp.*, 837 F.3d 1329, 1333 (Fed. Cir. 2016) ("Wi-Fi does not dispute that *Achates* renders its challenge to the Board's timeliness ruling nonappealable if *Achates* is still good law."). Because the panel concluded that *Cuozzo* did not implicitly overrule *Achates*, it held Wi-Fi's time-bar challenges to be

unreviewable, and affirmed. *Id.* at 1334–35, 1340; *see also Wi-Fi One, LLC v. Broadcom Corp.*, 668 F. App'x 893 (Fed. Cir. 2016) (summarily affirming the time-bar decisions on the '568 and '625 patents).

Wi-Fi petitioned for rehearing en banc. We granted Wi-Fi's petition to consider whether we should overrule *Achates* and hold that the Director's § 315(b) time-bar determinations are subject to judicial review. The question presented for en banc rehearing is:

> Should this court overrule *Achates Reference Publishing, Inc. v. Apple Inc.*, 803 F.3d 652 (Fed. Cir. 2015) and hold that judicial review is available for a patent owner to challenge the PTO's determination that the petitioner satisfied the timeliness requirement of 35 U.S.C. § 315(b) governing the filing of petitions for inter partes review?

*Wi-Fi One, LLC v. Broadcom Corp.*, 851 F.3d 1241, 1241 (Fed. Cir. 2017).

## II. DISCUSSION

As with any agency action, we apply the "strong presumption" favoring judicial review of administrative actions, including the Director's IPR institution decisions.[6] *Cuozzo*, 136 S. Ct. at 2140; *see also Gutierrez de*

---

[6]    Final decisions of the PTO are reviewed according to the standards provided in the Administrative Procedure Act ("APA"). *Cuozzo*, 136 S. Ct. at 2142; *Unwired Planet, LLC v. Google Inc.*, 841 F.3d 1376, 1379 (Fed. Cir. 2016). And 28 U.S.C. § 1295(a)(4)(A) provides this court with exclusive jurisdiction over an appeal from a decision of "the Patent Trial and Appeal Board of the United States Patent and Trademark Office with respect to . . . inter partes review under title 35."

*Martinez v. Lamagno*, 515 U.S. 417, 424 (1995) ("[F]ederal judges traditionally proceed from the 'strong presumption that Congress intends judicial review.'"); *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986); *United States v. Nourse*, 34 U.S. (9 Pet.) 8, 28–29 (1835). Accordingly, if a statute is "reasonably susceptible" to an interpretation allowing judicial review, we must adopt such an interpretation. *Kucana v. Holder*, 558 U.S. 233, 251 (2010); *Gutierrez de Martinez*, 515 U.S. at 434.

In view of this strong presumption, we will abdicate judicial review only when Congress provides a "clear and convincing" indication that it intends to prohibit review. *Cuozzo*, 136 S. Ct. at 2140; *see Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 778 (1985); *Block*, 467 U.S. at 349–50; *Return Mail, Inc. v. U.S. Postal Serv.*, 868 F.3d 1350, 1357 (Fed. Cir. 2017).

We find no clear and convincing indication in the specific statutory language in the AIA, the specific legislative history of the AIA, or the statutory scheme as a whole that demonstrates Congress's intent to bar judicial review of § 315(b) time-bar determinations. *See Cuozzo*, 136 S. Ct. at 2140. The parties have not cited, nor are we aware of, any specific legislative history that clearly and convincingly indicates congressional intent to bar judicial review of § 315(b) time-bar determinations. We review the statutory language and the statutory scheme in turn.

Starting with the statutory language, § 314(d) provides that "[t]he determination by the Director whether to institute an inter partes review *under this section* shall be final and nonappealable." (emphasis added). The natural reading of the statute limits the reach of § 314(d) to the determination by the Director whether to institute IPR as set forth in § 314. Subsection (a) of § 314—the only subsection addressing substantive issues that are part of the Director's determination "under this section"—reads:

**(a) Threshold.**--The Director may not authorize an inter partes review to be instituted unless the Director determines that the information present in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.

Subsection (a) does only two things: it identifies a threshold requirement for institution, and as *Cuozzo* recognized, it grants the Director discretion not to institute even when the threshold is met. 136 S. Ct. at 2140 ("[T]he agency's decision to deny a petition is a matter committed to the Patent Office's discretion."). It does not address any other issue relevant to an institution determination. The language of § 314(a) defines the threshold in terms of determinations that are focused on the patentability merits of particular claims. This determination is only preliminary, aimed just at what is reasonably likely to be decided when patentability is fully addressed, should an IPR be instituted. *See Cuozzo*, 136 S. Ct. at 2140. In referring to the preliminary patentability determination, the Court characterized the Director's discretion regarding institution as being "akin to decisions which, in other contexts, we have held to be unreviewable." *Id.*[7]

---

[7]    Examples include an agency's discretionary decision *not* to initiate a proceeding, *Cuozzo*, 136 S. Ct. at 2140, a grand jury's determination of probable cause, *id.*, and a court's denial of summary judgment, *see Ortiz v. Jordan*, 562 U.S. 180, 183–84 (2011); *Switz. Cheese Ass'n, Inc. v. E. Horne's Market, Inc.*, 385 U.S. 23, 25 (1966); *Function Media, LLC v. Google Inc.*, 708 F.3d 1310, 1322 (Fed. Cir. 2013).

In contrast, § 315(b) controls the Director's authority to institute IPR that is unrelated to the Director's preliminary patentability assessment or the Director's discretion not to initiate an IPR even if the threshold "reasonable likelihood" is present. Section 315(b) reads:

> **(b) Patent Owner's Action**. An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent. The time limitation set forth in the preceding sentence shall not apply to a request for joinder under subsection (c).

The dissent states that § 315(b) "does not go to the merits of the petition." Dissenting Op. at 5. This is correct. The time-bar decision is nowhere referred to in § 314(a). Additionally, the time bar is not focused on particular claims, whereas § 314(a)'s threshold determination is; the time bar involves only the time of service of a complaint alleging infringement "of the patent." Nothing in § 315(b) sets up a two-stage process for addressing the time bar: the time-bar determination may be decided fully and finally at the institution stage.

The time-bar determination, therefore, is not akin to either the non-initiation or preliminary-only merits determinations for which unreviewability is common in the law, in the latter case because the closely related final merits determination is reviewable. *See supra* note 7. Because § 314(a) does not mention this distinct issue, the PTO's position that the time-bar determination is unreviewable runs counter to the principle, as reflected in *Cuozzo*, that favors reading the statute to comport with,

not depart from, familiar approaches to comparable issues.[8]

This reading is consistent with the overall statutory scheme as understood through the lens of *Cuozzo*'s directive to examine the statutory scheme in terms of what is "closely related" to the § 314(a) determination. The Supreme Court in *Cuozzo* stated that "§ 314(d) bars judicial review" both when "a patent holder merely challenged the Patent Office's 'determin[ation] that the information presented in the petition . . . shows that there is a reasonable likelihood' of success 'with respect to at least 1 of the claims challenged,' § 314(a)" and, in addition, when "a patent holder grounds its claim in a statute closely related to *that* decision to institute inter partes review." 136 S. Ct. at 2142 (alterations in original) (emphasis added). The statutory scheme demonstrates that several sections of the AIA, such as the preliminary procedural requirements stated in §§ 311–13, relate more closely to the determination by the Director. The "reasonable likelihood" determination under § 314(a) is clearly about whether "the claims are unpatentable on the grounds asserted." *Id.* at 2140. The Court's statement of its holding thus strongly points toward unreviewability being limited to the Director's determinations closely related to the preliminary patentability determination or the exercise of discretion not to institute.

---

[8]    Although § 314(d) uses language somewhat different from the language of precursor provisions, there is no reason to infer a deliberate broadening of the scope of nonreviewability—certainly not a clear and convincing reason. Indeed, the Court in *Cuozzo* stressed the similarity of § 314(d) to its precursors, without mentioning differences. 136 S. Ct. at 2140.

Whether a petitioner has complied with § 315(b) is not such a determination, as it has nothing to do with the patentability merits or discretion not to institute. The time-bar provision contrasts with many of the preliminary procedural requirements stated in §§ 311–13, which relate to the Director's ability to make an informed preliminary patentability determination pursuant to § 314(a). Specifically, § 315(b) time-bar determinations are fundamentally different from those evaluating the satisfaction of § 312(a)(3)'s requirements, at issue in *Cuozzo*. Section 312(a)(3) demands particularity as to "each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge to each claim." That requirement is closely tied to the Director's determination of a "reasonable likelihood" of unpatentability of at least one claim. The time bar is not.

The issue that Wi-Fi appeals also is not "some minor statutory technicality." *Cuozzo*, 136 S. Ct. at 2140. The time bar is not merely about preliminary procedural requirements that may be corrected if they fail to reflect real-world facts, but about real-world facts that limit the agency's authority to act under the IPR scheme.[9] The

---

[9]    For instance, the dissent conflates "real party in interest" as used in § 312(a)(2) and § 315(b), and claims that "§ 312(a)(2) is part and parcel of the timeliness inquiry under § 315." Dissenting Op. at 10. This is incorrect. For example, if a petition fails to identify all real parties in interest under § 312(a)(2), the Director can, and does, allow the petitioner to add a real party in interest. *See, e.g.*, *Intel Corp. v. Alacritech, Inc.*, No. IPR2017-01392, Paper No. 11, at 23 (P.T.A.B. Nov. 30, 2017); *Elekta, Inc. v. Varian Medical Sys., Inc.*, No. IPR2015–01401, 2015 WL 9898990, at *4, *6 (P.T.A.B.

timely filing of a petition under § 315(b) is a condition precedent to the Director's authority to act. It sets limits on the Director's statutory authority to institute, balancing various public interests. And like § 315 as a whole, it governs the relation of IPRs to other proceedings or actions, including actions taken in district court.

Thus, the statutory scheme as a whole demonstrates that § 315 is not "closely related" to the institution decision addressed in § 314(a), and it therefore is not subject to § 314(d)'s bar on judicial review. *Cuozzo*, 136 S. Ct. at 2142; *cf. Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1049–51 (Fed. Cir. 2017) (holding that a similar nonappealability provision with respect to post-grant review, 35 U.S.C. § 324(e), does not preclude our review of an estoppel determination under 35 U.S.C. § 325(e)(1)). Accordingly, our review of the statutory language and the statutory scheme reveals no clear and convincing indication of Congress's intent to bar judicial review of § 315(b) time-bar determinations.

Enforcing statutory limits on an agency's authority to act is precisely the type of issue that courts have historically reviewed. *See, e.g.*, *City of Arlington v. F.C.C.*, 569 U.S. 290, 307 (2013); *Bowen*, 476 U.S. at 671; *Leedom v. Kyne*, 358 U.S. 184, 190 (1958). As a statutory limit on the Director's ability to institute IPR, the § 315(b) time

---

Dec. 31, 2015). For this reason, the PTO has established procedures to rectify noncompliance of § 312(a)(2). *Lumentum Holdings, Inc. v. Capella Photonics, Inc.*, No. IPR2015-00739, 2016 WL 2736005, at *3 (P.T.A.B. Mar. 4, 2016) (precedential); 37 C.F.R. §§ 42.8(a)(3), 42.8(b)(1). In contrast, if a petition is not filed within a year after a real party in interest, or privy of the petitioner is served with a complaint, it is time-barred by § 315(b), and the petition cannot be rectified and in no event can IPR be instituted.

bar is such an issue.  We hold that time-bar determinations under § 315(b) are reviewable by this court.

### III. CONCLUSION

The Supreme Court in *Cuozzo* instructed that the "strong presumption" favoring judicial review "may be overcome by '"clear and convincing"' indications, drawn from 'specific language,' 'specific legislative history,' and 'inferences of intent drawn from the statutory scheme as a whole,' that Congress intended to bar review."  136 S. Ct. at 2140.  Finding no such clear and convincing indications, we hold that the Director's time-bar determinations under § 315(b) are not exempt from judicial review, and overrule *Achates*'s contrary conclusion.  We do not decide today whether all disputes arising from §§ 311–14 are final and nonappealable.  Our holding applies only to the appealability of § 315(b) time-bar determinations.  We remand for the panel to consider in the first instance the merits of Wi-Fi's time-bar appeal.

**REMANDED TO THE MERITS PANEL**

# United States Court of Appeals
# for the Federal Circuit

_____

**WI-FI ONE, LLC,**
*Appellant*

**v.**

**BROADCOM CORPORATION,**
*Appellee*

**JOSEPH MATAL, PERFORMING THE FUNCTIONS AND DUTIES OF THE UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR, U.S. PATENT AND TRADEMARK OFFICE,**
*Intervenor*

_____

2015-1944

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-00601.

-----------------------------------------------------------------------

**WI-FI ONE, LLC,**
*Appellant*

**v.**

**BROADCOM CORPORATION,**
*Appellee*

**JOSEPH MATAL, PERFORMING THE FUNCTIONS AND DUTIES OF THE UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR, U.S. PATENT AND TRADEMARK OFFICE,**
*Intervenor*

————————————

2015-1945

————————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-00602.

-------------------------------------------------------------------

**WI-FI ONE, LLC,**
*Appellant*

**v.**

**BROADCOM CORPORATION,**
*Appellee*

**JOSEPH MATAL, PERFORMING THE FUNCTIONS AND DUTIES OF THE UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR, U.S. PATENT AND TRADEMARK OFFICE,**
*Intervenor*

————————————

2015-1946

————————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-00636.

———————————

O'MALLEY, *Circuit Judge*, concurring.

I agree with much of the majority's thoughtful reasoning, and I certainly agree with its conclusion that time-bar determinations under 35 U.S.C. § 315(b) are not exempt from judicial review. I write separately because, in my view, the question presented for en banc rehearing in this case is much simpler than the majority's analysis implies; it turns on the distinction between the Director's authority to exercise discretion when reviewing the adequacy of a petition to institute an inter partes review ("IPR") and authority to undertake such a review in the first instance. If the United States Patent and Trademark Office ("PTO") exceeds its statutory authority by instituting an IPR proceeding under circumstances contrary to the language of § 315(b), our court, sitting in its proper role as an appellate court, should review those determinations. Indeed, we should address those decisions in order to give effect to the congressionally imposed statutory limitations on the PTO's authority to institute IPRs.

As we explained in *Intellectual Ventures II LLC v. JPMorgan Chase & Co.*, 781 F.3d 1372 (Fed. Cir. 2015), when assessing whether we may exercise jurisdiction over an appeal from institution decisions regarding covered business method patents ("CBMs"), Congress consistently differentiated between petitions to institute and the act of institution in the AIA. *Id.* at 1376. The former is what a party seeking to challenge a patent in a CBM proceeding, a derivation proceeding, a post-grant proceeding, or an IPR files—and of which the PTO reviews the sufficiency—and the latter is what the Director is authorized to do. *Id.* Because only the Director or her delegees may "institute" a proceeding, § 315(b)'s bar on institution is necessarily

directed to the PTO, not those filing a petition to institute. *See id.*

The PTO's own regulations support this reading of § 315(b); they clearly consider the possibility that the Board might mistakenly take actions in excess of its statutory jurisdiction. For example, Part 42 of Title 37 in the Code of Federal Regulations "governs proceedings before the Patent Trial and Appeal Board." 37 C.F.R. § 42.1(a) (2016). In addressing "Jurisdiction" for these proceedings, Part 42 expressly requires that "[a] petition to institute a trial must be filed with the Board consistent with any time period required by statute." *Id.* § 42.3(b); *see also id.* § 42.2 (identifying IPR proceedings as falling within the definition of "trial"). A straightforward reading of these regulations indicates that the PTO believed, at least at the time it issued those regulations, that it would not have statutory jurisdiction or authority to institute proceedings—including IPRs—in response to petitions to institute filed *outside* the time limit set by statute for such filings, regardless of the adequacy of those petitions.

Section 314(d)'s bar on appellate review is directed to the Director's assessment of the substantive adequacy of a timely filed petition. Because § 315(b)'s time bar has nothing to do with the substantive adequacy of the petition and is directed, instead, to the Director's authority to act, § 314(d) does not apply to decisions under that provision.

This conclusion not only is consistent with, but, in my view, is dictated by the Supreme Court's reasoning in *Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 2131 (2016). There, the Court considered whether § 314(d) bars review of determinations by the PTO that a petition for IPR complies, at least implicitly, with the "particularity" requirement set forth in § 312(a)(3). 136 S. Ct. at 2138–39. The majority here correctly notes that the

Court in *Cuozzo* "recognize[d] the 'strong presumption' in favor of judicial review that we apply when we interpret statutes, including statutes that may limit or preclude review." *Id.* at 2140 (quoting *Mach Mining, LLC v. E.E.O.C.*, 135 S. Ct. 1645, 1650–51 (2015) (internal quotation marks omitted)). The Court observed, however, that this presumption could be overcome by "clear and convincing" indications, drawn from "specific language," "specific legislative history," and "inferences of intent drawn from the statutory scheme as a whole," that Congress intended to bar review. *Id.* (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349–50 (1984)).

In deciding that the presumption in favor of judicial review was overcome in that case, the Court analyzed and distinguished *Lindahl v. Office of Personnel Management*, 470 U.S. 768 (1985). *Lindahl* involved the question of whether courts can review disability determinations for federal employees made by a federal agency. 470 U.S. at 771. According to the majority in *Cuozzo*, *Lindahl* involved the construction of a statute that (1) directed an agency to "determine questions of liability;" (2) made those determinations "final," "conclusive," and "not subject to review;" and (3) barred courts from revisiting the "factual underpinnings of . . . disability determinations." 136 S. Ct. at 2141 (quoting *Lindahl*, 470 U.S. at 771, 791). The Court observed, however, that the same statute permitted courts to consider claims alleging, for example, that the agency "substantial[ly] depart[ed] from important procedural rights." *Id.* (quoting *Lindahl*, 470 U.S. at 791).

The *Cuozzo* majority characterized *Lindahl*'s interpretation of its particular statute as "preserv[ing] the agency's primacy over its core statutory function in accord with Congress' intent," and declared that its "interpretation of the 'No Appeal' provision [in the AIA] has the same effect." *Id.* This is because Congress, in enacting the AIA, recognized that the "core statutory function" of the

PTO is to make patentability determinations, and chose to insulate from judicial review preliminary determinations by the PTO as to whether IPR petitions "show[] that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a); *see Cuozzo*, 136 S. Ct. at 2141 ("The text of the 'No Appeal' provision, along with its place in the overall statutory scheme, its role alongside the Administrative Procedure Act, the prior interpretation of similar patent statutes, and Congress' purpose in crafting IPR, all point in favor of precluding review of the [PTO]'s *institution decisions*." (emphasis added)). For this reason, the Court found that Cuozzo's claim that an IPR petition "was not pleaded 'with particularity' under § 312 [wa]s little more than a challenge to the [PTO]'s conclusion, under § 314(a), that the 'information presented in the petition' warranted review." *Id.* at 2142 (citation omitted).

Section 315(b)'s time bar falls squarely on the other side of *Cuozzo*'s appealability ledger, for it is not "closely tied to the application and interpretation of statutes related to the [PTO]'s decision to initiate [IPR]." *Id.* at 2141. Section 315(b) does not contemplate that the PTO render a decision related to patentability—it simply places a limit on the PTO's authority to institute IPRs that is based on a comparison of two or more dates. And it does so with the unambiguous phrase "[a]n [IPR] *may not be instituted* if . . . ." 35 U.S.C. § 315(b) (emphasis added). In contrast with the Director's § 314(a) determination, which involves the preliminary application of patentability principles, no such decision is contemplated in § 315(b). *See N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017) (describing a clause that "speaks to who 'may not' be an acting officer" as an imperative).

Put another way, § 315(b) codifies one of the "important procedural rights" that Congress chose to afford patent owners in the IPR context. *Lindahl*, 470 U.S. at

791.  Allowing judicial review of erroneous determinations by the PTO as to whether the § 315(b) time bar applies would prevent the agency from "act[ing] outside its statutory limits," one of the categories of "shenanigans" envisioned by the majority in *Cuozzo*.  136 S. Ct. at 2141–42.

A determination by the PTO whether an IPR petition is time-barred under § 315(b) is entirely unrelated to the agency's "core statutory function" of determining whether claims are or are not patentable.  *Id.* at 2141 (quoting *Lindahl*, 470 U.S. at 791).  Unlike the threshold merits inquiry subsumed within § 314(a), no technical expertise is required to calculate whether a petition is "filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent."  35 U.S.C. § 315(b).

Congress is well versed in establishing statutory time bars.  Congressional discretion should control the application of such time bars, not that of the Director of the PTO.  I do not see the need to say more.

# United States Court of Appeals for the Federal Circuit

———————————

**WI-FI ONE, LLC,**
*Appellant*

v.

**BROADCOM CORPORATION,**
*Appellee*

**JOSEPH MATAL, PERFORMING THE FUNCTIONS AND DUTIES OF THE UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR, U.S. PATENT AND TRADEMARK OFFICE,**
*Intervenor*

———————————

2015-1944

———————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-00601.

-----------------------------------------------------------------------

**WI-FI ONE, LLC,**
*Appellant*

v.

**BROADCOM CORPORATION,**
*Appellee*

**JOSEPH MATAL, PERFORMING THE FUNCTIONS AND DUTIES OF THE UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR, U.S. PATENT AND TRADEMARK OFFICE,**
*Intervenor*

————————————

2015-1945

————————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-00602.

-------------------------------------------------------------------

**WI-FI ONE, LLC,**
*Appellant*

**v.**

**BROADCOM CORPORATION,**
*Appellee*

**JOSEPH MATAL, PERFORMING THE FUNCTIONS AND DUTIES OF THE UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR, U.S. PATENT AND TRADEMARK OFFICE,**
*Intervenor*

————————————

2015-1946

————————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-00636.

———————————————

HUGHES, *Circuit Judge*, joined by LOURIE, BRYSON, and DYK, *Circuit Judges*, dissenting.

Congress barred judicial review of the Patent and Trademark Office (PTO) Director's decision to institute inter partes review (IPR) in 35 U.S.C. § 314(d). The majority opinion, however, limits this prohibition to the Director's assessment of the criteria for instituting review set forth in § 314. Accordingly, this court finds that § 314(d) does not apply to other preliminary determinations, such as whether the petition was timely filed. I do not agree with such a narrow reading of the statute, which not only contradicts the statutory language, but is also contrary to the Supreme Court's construction of that language in *Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 2131 (2016).

In *Cuozzo*, the Supreme Court held that § 314(d) prohibited judicial review of "questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review," including questions of compliance with 35 U.S.C. § 312(a)(3)'s petition requirements. 136 S. Ct. at 2141. 35 U.S.C. § 315(b), which describes when an IPR may be "instituted," is even more closely related to institution decisions than § 312(a)(3)—which does not use the word "institute." In my view, *Cuozzo* confirms that § 314(d) is not limited to the merits of the petition, but also bars judicial review of closely related issues such as the petition's timeliness. Because the majority opinion is inconsistent with *Cuozzo* and the plain meaning of § 314(d), I respectfully dissent.

## I

Our inquiry should start and end with the words of the statute.  The APA exempts agency actions from judicial review "to the extent that statutes preclude judicial review."  5 U.S.C. § 701.  There is a "strong presumption that Congress intends judicial review of administrative action" and any contrary intent must be clear and convincing.  *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670–71 (1986).  This presumption, of course, is not insurmountable.  Congress can enact specific statutes to bar review, or the legislative history might manifest Congress's intent to do so.  *Id*. at 673.  Even in the absence of an express prohibition, the overall statutory structure might indicate that Congress sought to prohibit judicial review.  *See United States v. Fausto*, 484 U.S. 439, 447–48 (1988); *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 352 (1984).

Congress's intent to prohibit judicial review of the Board's IPR institution decision is clear and unmistakable.  Section 314(d) states "[t]he determination by the Director whether to institute an inter partes review under this section shall be final and *nonappealable*." (emphasis added.)  The statute *calls out* a specific agency determination, and expressly *prohibits* courts from reviewing that decision.  "Absent persuasive indications to the contrary, we presume Congress says what it means and means what it says." *Simmons v. Himmelreich*, 136 S. Ct. 1843, 1848 (2016).

*Cuozzo* confirms this interpretation of § 314(d). There, the Supreme Court found that clear and convincing indications overcame the presumption in favor of judicial reviewability with respect to IPR institution decisions.  *Cuozzo*, 136 S. Ct. at 2140.  To reach this conclusion, the Court looked to the plain language of the statute, and stressed that whether the "Patent Office unlawfully initiated its agency review is not appealable"

because "*that is what § 314(d) says.*"  *Id.* at 2139 (emphasis added).  *Cuozzo* also foreclosed any notion that § 314(d) only applies to the question of whether the petition raises a reasonable likelihood of invalidity. *See id.* at 2141. Instead, the statute prohibits judicial review of "questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review." *Id.*

The petition's timeliness under § 315(b) is part of the Board's institution decision, and is therefore barred from judicial review.  Section 315(b) states that "[a]n inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent."  The question of timeliness does not go to the merits of the petition, nor does it become part of the PTO's final determination.  Instead, the PTO evaluates timeliness within the context of the PTO's preliminary determination of whether to institute IPR at all.  Accordingly, timeliness under § 315(b) is plainly a question "closely tied" to the Director's decision to institute.  Indeed, it is a specific requirement for "institution."  Moreover, although Justice Alito disagreed with the ultimate result in *Cuozzo*, even he recognized that "the petition's timeliness, no less than the particularity of its allegations, is 'closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate . . . review,' and the Court says that such questions are unreviewable." *Id.* at 2155 (Alito, J., concurring in part and dissenting in part) (alteration in original).

This court, however, confines the scope of the judicial review bar in § 314(d) to "the determination by the Director whether to institute IPR as set forth in § 314," which establishes the reasonable likelihood standard for instituting review. Maj. Op. at 15.  But again, *Cuozzo* already held that § 314(d) is not limited to the Director's reasona-

ble likelihood determination. 136 S. Ct. at 2141. The Supreme Court rejected the notion that the presumption of judicial review permits courts to review "any issue bearing on the Patent Office's preliminary decision to institute inter partes review." *Id.* Rather, the Supreme Court explained that "Congress has told the *Patent Office* to determine whether inter partes review should proceed, and it has made the agency's decision 'final' and 'nonappealable.' § 314(d). Our conclusion that courts may not revisit this initial determination gives effect to this statutory command." *Id.*

To sidestep this binding precedent, the majority states that § 315(b) is appealable because "the time-bar determination may be decided fully and finally at the institution stage." Maj. Op. at 17. And the majority suggests that § 314(d) is limited to "non-initiation or preliminary-only merits determinations for which unreviewability is common in the law." *Id.* But if § 314(d) only applies to issues that are incorporated into the final written decision, then the appeal bar essentially becomes a prohibition on interlocutory appeal. The Supreme Court expressly rejected this interpretation in *Cuozzo.* 136 S. Ct. at 2140. As the Court explained:

> The dissent, like the panel dissent in the Court of Appeals, would limit the scope of the "No Appeal" provision to *interlocutory* appeals, leaving a court free to review the initial decision to institute review in the context of the agency's final decision. We cannot accept this interpretation. It reads into the provision a limitation (to interlocutory decisions) that the language nowhere mentions and that is unnecessary. The Administrative Procedure Act already limits review to final agency decisions. The Patent Office's decision to initiate inter partes review is "preliminary," not "final." And the agency's decision to deny a petition is a matter committed to the Patent Office's

discretion. So, read as limited to such preliminary and discretionary decisions, the "No Appeal" provision would seem superfluous.

*Id.* (citations omitted).

The majority concludes that the appeal bar does not apply to "limits on the Director's statutory authority to institute," Maj Op. at 20. But this position was clearly rejected in *Cuozzo*. 136 S. Ct. at 2139–40. Even setting aside *Cuozzo*, the Supreme Court also rejected this type of statutory interpretation in *Briscoe v. Bell*, 432 U.S. 404 (1977).

*Briscoe* involved the Voting Rights Act, which allowed the Attorney General to determine whether "the preconditions for application of the Act to particular jurisdictions are met." *Id.* at 407. The statute provided that "[a] determination or certification of the Attorney General or of the Director of the Census under this section . . . shall not be reviewable in any court . . . ." *Id.* at 408. The D.C. Circuit explained that "[i]t is . . . apparent that even where the intent of Congress was to preclude judicial review, a limited jurisdiction exists in the court to review actions which on their face are plainly in excess of statutory authority." *Id.* (quoting *Briscoe v. Levi*, 535 F.2d 1259, 1265 (D.C. Cir. 1976)). The D.C. Circuit further concluded that this statute barred judicial review of substantive issues like "the actual computations made by the Director of the Census," but not "whether the Director acted 'consistent with the apparent meaning of the statute.'" *Id.* at 408–09 (quoting *Briscoe*, 535 F.2d at 1265). The Supreme Court reversed, and found that "[s]ection 4(b) of the Voting Rights Act could hardly prohibit judicial review in more explicit terms." *Id.* at 409. The Court stressed that "[t]he language is absolute on its face and would appear to admit of no exceptions." *Id.*

Section 314(d) similarly prohibits review of "the determination by the Director whether to institute an inter

partes review." Like the statute in *Briscoe*, the language is absolute and provides no exceptions. Nevertheless, the majority concludes that "[t]he timely filing of a petition under § 315(b) is a *condition precedent* to the Director's authority to act." Maj. Op. at 20 (emphasis added). Like the D.C. Circuit in *Briscoe*, the majority attempts to distinguish between "a decision of the Board made within its jurisdiction" and "an order of the Board made in excess of its delegated powers." *Briscoe*, 535 F.2d at 1264. The Supreme Court rejected this reasoning, and we should too.

Nor does the phrase "under this section" in § 314(d) limit the bar on judicial review to only a subset of requirements for institution. This court's majority opinion finds that § 314(d) does not bar review of timeliness because the phrase "under this section" "*limits* the reach of § 314(d) to the determination by the Director whether to institute IPR *as set forth* in § 314." Maj. Op. at 15 (emphasis added). But to be clear, the phrase "under this section" simply refers to the fact that inter partes review is instituted under § 314. The phrase does not limit the bar on judicial review to the Director's assessment of the criteria under § 314. Indeed, *Cuozzo* foreclosed this reading by holding that the bar on judicial review extends to the Director's assessment of the requirements under § 312, which is plainly a different statutory section than § 314. 136 S. Ct. at 2141.

## II

The plain language of § 314(d) should lead us to conclude that Congress intended to preclude judicial review of whether IPR petitions are timely filed. To the extent the statute is unclear, the  history of the AIA dispels any doubt that § 314(d) bars judicial review of issues like timeliness and the identity of real parties in interest.

The difference between § 314(d) and the bar on judicial review for reexaminations confirms that Congress

intended to broadly prohibit review of IPR institution decisions. "[A] change in phraseology" in the statute "creates a presumption of a change in intent." *Crawford v. Burke*, 195 U.S. 176, 190 (1904). And it is unlikely that Congress would enact a statutory provision using different language "without thereby intending a change of meaning." *Id.*; *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1578 (2016) (Thomas, J., concurring) ("[W]hen Congress enacts a statute that uses different language from a prior statute, we normally presume that Congress did so to convey a different meaning.").

Even before the AIA, third-parties could seek administrative patent cancellation through reexamination. When the PTO receives a request for reexamination, the Director must determine whether the request raises a substantial new question of patentability. And 35 U.S.C. § 303(c) provides that, "[a] determination by the Director . . . that no substantial new question of patentability has been raised will be final and nonappealable."[1] Accordingly, the statute specifically bars review of the narrow issue of whether the request raises a "substantial new question of patentability." *Id.* The statute *does not* bar review of the entire decision to initiate reexamination.

In stark contrast, Congress used markedly different language for inter partes review and post-grant review proceedings. Instead of barring review of the Director's

---

[1] This was similarly true under the old 35 U.S.C. § 312(c) (2006), governing inter partes reexamination, which barred appeal of "[a] determination by the Director pursuant to subsection (a)," *i.e.*, the determination that "a substantial new question of patentability affecting any claim of the patent concerned is raised by the request." 35 U.S.C. § 312(a) (2006).

determination of a specific issue, § 314(d) and 35 U.S.C.
§ 324(e) broadly prohibit review of the Director's "deter-
mination . . . *whether to institute*" review. Accordingly,
these statutes identify a *specific action* by the Director,
not tied to the resolution of a specific issue such as sub-
stantial new question of patentability. Such linguistic
differences are particularly significant because the AIA
retained § 303(c), with its different language, with respect
to reexaminations.

## III

Even if we followed the majority's approach and tried
to parse out which requirements for institution are barred
from judicial review under § 314, it still makes no sense to
distinguish § 315 from §§ 311–314. The assumption that
§ 315 is less closely related to § 314 than the institution
criteria of §§ 311–313, *see* Maj. Op. at 18–19, is simply
incorrect. For example, § 312(a)(1) and § 312(a)(2) relate
to the payment of fees and identification of real parties in
interest, which the majority agrees cannot be appealed.
These issues, however, bear the same relation to the
institution decision as the inquiry under § 315.

Under § 315(b), the Director cannot institute review if
the petition was filed more than one year after the peti-
tioner or its *real party in interest* was served with a com-
plaint alleging infringement. And petitioners have the
onus to identify all real parties in interest under
§ 312(a)(2), which states that a petition "may be consid-
ered only if . . . the petition identifies all real parties in
interest." Based on the petitioner's disclosure, the Direc-
tor can assess whether any of the petitioner's real parties
in interest was served with a complaint more than one
year before the petition. Thus, § 312(a)(2) is part and
parcel of the timeliness inquiry under § 315.

The majority tries to distinguish between the real
party in interest inquiry under § 312(a)(2) and § 315(b).
Specifically, the majority notes that "if a petition fails to

identify all real parties in interest under § 312(a)(2), the Director can, and does, allow the petitioner to add a real party in interest." Maj. Op. at 22 n.11. By contrast, a petition that is time-barred under § 315 cannot be rectified. *Id.*

To illustrate why this distinction is flawed, suppose that a patent owner argues that an unidentified third-party, who has not been sued for infringement, is a real party in interest to the petition. The Director disagrees with the patent owner and institutes review. No one disputes that the Director's decision on real party in interest is unreviewable in this scenario. Now suppose the Director makes the *exact same determination*, but with respect to a third-party who was sued more than one year before the petition was filed. Even though the Director is making the same factual inquiry, his determination now becomes reviewable because it implicates the time-bar. This result is illogical. The same inquiry does not become more or less "closely related" to the institution determination simply because the results of that inquiry have different consequences.

The facts of this appeal underscore why timeliness under § 315 is as closely related to the institution decision as the requirements under § 312. Wi-Fi One does not contend that Broadcom itself was served with a complaint more than one year before its petition. Rather, Wi-Fi One asserts that various defendants in a 2010 Texas lawsuit were unidentified real parties in interest to Broadcom's petition. On remand, the panel must determine whether the Board properly resolved which parties constitute a real party in interest under § 312(a)(2). Even Wi-Fi One recognizes that this inquiry is highly fact dependent, as it sought broad-ranging discovery into agreements, payments, and e-mail communications in the proceedings below. But giving the Board wide discretion on such preliminary determinations is what enables IPRs to function as an efficient method of resolving validity

issues. Congress would not have "giv[en] the Patent Office significant power to revisit and revise earlier patent grants . . . if it had thought that the agency's final decision could be unwound under some minor statutory technicality related to its preliminary decision to institute inter partes review." *Cuozzo*, 136 S. Ct. at 2139–40.

Vacating the Board's invalidity decision on the basis of threshold questions like timeliness or real parties in interest will squander the time and resources spent adjudicating the actual merits of the petition. This is counter to the AIA's purpose of "providing quick and cost effective alternatives to litigation." H.R. Rep. No. 112-98, pt. 1, at 48 (2011). Congress recognized this issue, so it prohibited this court from reviewing the Board's institution decision. It is not our prerogative to second-guess that policy decision, nor should we rely on tenuous statutory interpretations to undermine it.

## IV

Because we do not have jurisdiction to review the Board's determination that Broadcom's petition was timely filed, I respectfully dissent.